UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

LAWRENCE NUNLEY,                          )
                                          )
                    Petitioner,           )
                                          )
            v.                            )        No. 2:19-cv-00012-JRS-DLP
                                          )
RICHARD BROWN,                            )
                                          )
                    Respondent.           )

**Order Denying Petition for a Writ of Habeas Corpus**

In his petition for a writ of habeas corpus, Lawrence Nunley challenges his 2008 Harrison

County convictions for child molesting and disseminating matter harmful to a minor. For the

reasons explained in this Order, Mr. Nunley's petition for a writ of habeas corpus is **denied**, and

the action is dismissed with prejudice. In addition, the Court finds that a certificate of appealability

should not issue.

## I. Background

District court review of a habeas petition presumes all factual findings of the state court to

be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1);

*Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The Indiana Court of Appeals summarized

Mr. Nunley's offense as follows:

> Nunley lived with his teenage son and his son's girlfriend, K.S. K.S. sometimes
> babysat six-year-old A.Y. A.Y.'s mother, T.C., testified A.Y. "loved [K.S.] to
> death." (Tr. at 534.) On April 13, 2007, A.Y. asked to spend the night at Nunley's
> residence. When T.C. dropped off A.Y., Nunley told her K.S. was on the way there.
> T.C. was under the impression that K.S. would be watching A.Y. According to
> A.Y., K.S. and her boyfriend were there for only a brief time that night.
>
> Sometime during the evening, Nunley called A.Y. back to his bedroom and showed
> her a pornographic video. A.Y. was wearing a tee shirt and panties. He took off her
> panties and licked her vagina. He also made her suck on his penis.

The next day, T.C. and R.C. picked up A.Y. After they had been in the car for a few minutes, A.Y. told them she and Nunley had a secret. A.Y. would not say what it was, so T.C. tried to trick her into telling by saying, "That's okay. I know what the secret is." (*Id.* at 537.) Then A.Y. wanted to tell them, but she did not want to say it out loud, so her parents gave her a pencil and an envelope to write on. Her note indicated she "was sucking his weenie-bob and he was licking my pee-pee." (*Id.* at 626.)

After reading the note, T.C. turned the vehicle around and went back to Nunley's residence. She took a bat and started hitting Nunley's motorcycle and truck so he would come outside. Nunley came to the door. T.C. yelled at him and accused him of molesting A.Y. Nunley denied her accusations.

T.C., R.C., and A.Y. then went to the Washington County Police Department to make a report. They spoke to State Trooper Kevin Bowling. Trooper Bowling first attempted to interview A.Y. alone, but that did not work well, so T.C. stayed in the room with her while A.Y. answered questions. A.Y. said Nunley made her watch a "bad movie." (*Id.* at 626.) Trooper Bowling asked her what she meant by that, and she said, a "naked movie." (*Id.*) T.C. showed him the note A.Y. had written. T.C. believed she left the note with Trooper Bowling, but Trooper Bowling had no record or recollection of what happened with the note. Trooper Bowling referred the case to the Department of Child Services.

Authorities tried to arrange a forensic interview of A.Y., but T.C. did not immediately follow through. The interview was finally conducted on April 18, 2008, a little over a year after A.Y. was molested.

Donna Lloyd Black conducted the forensic interview of A.Y. at Comfort House. A.Y.'s interview was videotaped. Comfort House has an observation room for representatives from the prosecutor's office, law enforcement, and the Department of Child Services. Black can communicate with them by two-way radio, but a child being interviewed cannot see or hear the people in the observation room. Detective William Wibbels was in the observation room during A.Y.'s interview.

Nunley was charged with four counts of Class A felony child molesting: Count 1 alleged he touched A.Y.'s vagina with his mouth, Count 2 alleged he made A.Y. put her mouth on his penis, Count 3 alleged he put his hand in A.Y.'s vagina, and Count 4 alleged he touched A.Y.'s vagina with his penis. He was also charged with one count of Class D felony dissemination of matter harmful to minors, which alleged he showed A.Y. a pornographic movie.

At the time of trial, A.Y. was eight years old. A.Y. started crying at several points during her testimony and needed multiple breaks. A.Y. stated it was hard to say what had happened and that she could only write it. The prosecutor then had her write down what happened and read it to the jury. She testified she saw Nunley's penis when he made her suck on it and he licked her "pee pee." (Tr. at 450.) A.Y.

testified he forced her to do these things by threatening to hurt her parents or call the police.

T.C. testified as to why she did not immediately bring A.Y. for a forensic interview: "I had second thoughts ... just because of the fact of putting my daughter through this. And not only that ... there's a side of you that thinks maybe if you just don't acknowledge it, that it'll go away." (*Id.* at 549.) A juror asked, "[W]hat made you continue to think about it? What, was it brought up by [A.Y.]?" (*Id.* at 569). T.C. responded, "No, it wasn't brought up by [A.Y.]. It was brought up by other people. Uhm, there were other allegations that I had heard about." (*Id.*) Nunley objected and moved for a mistrial, because T.C. had been instructed not to refer to any other allegations against him. The trial court denied the motion for mistrial because T.C. did not specify the nature of the allegations, and it instructed the jury to disregard T.C.'s answer.

The videotape was played for the jury. The video was difficult to understand in some places, but Black testified she was able to understand what A.Y. was saying to her during the interview. The prosecutor therefore asked Black to recount how A.Y. had said Nunley had touched her. Black testified A.Y. said Nunley "touched her on her pee-pee with his weenie-bob, his hand and his tongue," that he "made her put his weenie-bob in her mouth and suck it," and that he made her watch a video with naked people in it. (*Id.* at 613.) Detective Wibbels also testified concerning A.Y.'s allegations made during the interview.

Nunley testified [on] his own behalf. He claimed T.C. called and asked if he could watch A.Y. while she went to Corydon. He asserted T.C. did not bring any extra clothes for A.Y., and he did not think A.Y. would be spending the night. He claimed A.Y. fell asleep on the couch soon after arriving, and then his friend, Michelle Cayton, came over to Nunley's residence to spend the night, leaving shortly before T.C. picked up A.Y. Nunley claimed he was in a relationship with T.C., and when T.C. came to pick up A.Y., she asked to move in with him. He would not let her, and she was angry when she left. Although Nunley voluntarily spoke with the police, he never told them Cayton had been at his residence on the night in question.

The jury found Nunley guilty as charged.

*Nunley v. State*, 916 N.E.2d 712, 714–16 (Ind. Ct. App. 2009) ("*Nunley I*") (footnotes omitted).

On appeal, Nunley raised four issues, which the Indiana Court of Appeals reordered and restated:

(1) whether the trial court committed reversible error by admitting A.Y.'s hearsay statements via the videotape of her interview and the testimony of several witnesses; (2) whether the trial court abused its discretion by excluding evidence A.Y. had

accused her mother's boyfriend of attacking her and then later recanted; (3) whether the prosecutor committed misconduct by stating in her closing argument that A.Y. had not been taught how to lie; and (4) whether the trial court abused its discretion by denying Nunley's motion for a mistrial after T.C. referred to other allegations against Nunley.

*Id.* at 716. The court first held that the testimony about what A.Y. wrote on the envelope was admissible but that A.Y.'s forensic interview was not. *Id.* at 716–19. The court reversed Mr. Nunley's child molesting convictions in Counts 3 and 4, which were based solely on the interview, but "conclude[d] that the admission of the evidence was harmless error as to Counts 1, 2, and 5 because it was merely cumulative of other properly admitted evidence, including A.Y.'s own trial testimony." *Id.* at 719.

Next, the court held that the trial court properly excluded evidence that A.Y. had falsely accused her mother's boyfriend of attacking her. *Id.* at 720–21. The court concluded that the evidence was not admissible under Indiana Evidence Rule 608(b) and did not deny Mr. Nunley his right to present a defense. *Id.* at 721. The court then held that Mr. Nunley waived his argument that the prosecutor committed misconduct during closing argument by not moving for a mistrial. *Id.* at 722. Finally, the court held that the trial court did not abuse its discretion when it denied a mistrial after T.C. referred to "other allegations" because T.C. was not specific and the court admonished the jury. *Id.*

Mr. Nunley filed a petition to transfer to the Indiana Supreme Court, raising two issues. Dkt. 14-6. First, he argued that the trial court violated his right to present a defense when it excluded evidence about A.Y.'s false allegation. *Id.* at 6–8. Second, he argued that the trial court abused its discretion when it admitted hearsay. *Id.* at 8–10. The Indiana Supreme Court asked the parties to submit additional briefing on Indiana Evidence Rule 608. Dkt. 14-2 at 4. Mr. Nunley

argued that the trial court violated his right to cross-examination. Dkt. 14-7. The court denied Mr. Nunley's petition on March 4, 2010. Dkt. 14-2 at 4.

Following his direct appeal, Mr. Nunley filed a petition for post-conviction relief in state court. He asserted that both his trial and appellate counsel provided ineffective assistance of counsel in several respects. *Nunley v. State*, 2018 WL 2325438 (Ind. Ct. App. May 23, 2018) ("*Nunley II*"). The trial court denied Mr. Nunley's petition following a hearing, and the Indiana Court of Appeals affirmed. *Id.* at *9. The Indiana Supreme Court denied Mr. Nunley's petition to transfer. Dkt. 14-10 at 9.

Mr. Nunley next filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court raising several issues.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

### III. Discussion

Mr. Nunley raises four claims in his petition. The first two—that he was denied his right to prevent a defense and his right to confrontation—were last discussed by the Indiana Court of Appeals on direct appeal in *Nunley I*. The third and fourth claims—ineffective assistance of trial counsel and ineffective assistance of appellate counsel—were last discussed by the Indiana Court of Appeals on post-conviction review in *Nunley II*. The Court addresses each claim in turn.

### A.     Denial of a Defense

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam) (internal citation and quotation omitted). Mr. Nunley argues he was deprived of his opportunity to present a complete defense when the trial court excluded evidence of an unrelated recantation A.Y. made.

Shortly before Mr. Nunley's trial, A.Y.'s mother had been dating a man named Eddie Foreman. Foreman violently beat her, resulting in serious injuries. DA App.[1] at 202, 251. A.Y. witnessed the incident and called the police. *Id.* at 202. A.Y. initially told police that Foreman injured her, too, because "I just wanted him to go to jail really, 'cause he deserved it." *Id.* at 202-03. About six weeks later, A.Y. went to the prosecutor's office with a note that stated Foreman had not assaulted her and "she did not want to see him get in trouble for something he didn't do." Tr. 379-80.

---

[1] The Court uses the following citation format throughout this Order: "Tr." – Trial Transcript; "DA App." – Direct Appeal Appendix; "PCR Tr." – Post-Conviction Hearing Transcript.

Mr. Nunley's counsel sought to introduce evidence of this incident to attack A.Y.'s credibility. *Id.* at 378. The State objected, citing Indiana Rule of Evidence 608(b). That rule provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of another witness whose character the witness being cross-examined has testified about.

The trial court excluded the evidence, stating that part of the reason for the rule was to avoid "hav[ing] a series of mini trials about …any instances that a person might've lied in their entire lifetime so that there wouldn't be a trial about a hundred collateral matters." Tr. at 382, 385.

On appeal, the court rejected the argument that the exclusion of this evidence violated Mr. Nunley's Sixth Amendment right to present a defense. *Nunley I*, 916 N.E.2d at 720. It held that the trial court properly excluded the evidence under Indiana Evidence Rule 608(b). *Id.* It relied on another Indiana Court of Appeals case, *Saunders v. State*, 848 N.E.2d 117, 1122 (Ind. Ct. App. 2006), which correctly identified the Sixth Amendment right. The *Saunders* court stated "that the evidence rule preventing evidence of specific acts of untruthfulness must yield to a defendant's Sixth Amendment right of confrontation and right to present a full defense." *Id.* However, in upholding the trial court's decision to not allow extrinsic evidence for impeachment, it noted that the Indiana Supreme Court had "limited this exception to very narrow circumstances—specifically prior false accusations of rape." *Id.* (citing *State v. Walton*, 715 N.E.2d 824, 827 (Ind. 1999)).

 "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Jackson*, 569 U.S. at 509. A state's rules of evidence give way to a defendant's right to present a complete defense only when those rules (1) "'infringe upon a weighty interest of the accused'" and (2) "'are arbitrary or disproportionate

to the purposes they are designed to serve.'" *Hanson v. Beth*, 738 F.3d 158, 163 (7th Cir. 2013) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

The Supreme Court decision in *Jackson* is particularly instructive. On trial for rape, the defendant tried to present police reports and officer testimony to show that the victim had accused him of assaulting her before, which the police could not corroborate. *Jackson*, 569 U.S. at 507. The trial court excluded the evidence under a Nevada statute that generally precludes extrinsic evidence of specific instances of the witness's conduct to attack her credibility. *Id.* at 509. On federal habeas, the defendant argued that the trial court violated his constitutional right to present a defense. *Id.* at 508. The Ninth Circuit agreed and granted a conditional writ of habeas corpus. *Id.*

The Supreme Court reversed because the state court's decision was reasonable. *Id.* at 509, 512. Like the Indiana Court of Appeals here, the state court "recognized and applied the correct legal principle." *Id.* at 509 (quotation marks and citation omitted). The court also applied a state statute supported by Supreme Court precedent and "akin to the widely accepted rule of evidence law that generally precludes the admission of evidence of specific instance of a witness' conduct to prove the witness' character for untruthfulness." *Id.* at 509–10 (citing *Clark v. Arizona*, 548 U.S. 735, 775 (2006); Fed. Rule Evid. 608(b)). "The constitutional propriety of this rule cannot be seriously disputed." *Id.* at 510. The Supreme Court reasoned that "[t]he admission of extrinsic evidence of specific instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly embarrass the victim, surprise the prosecution, and unduly prolong the trial." *Id.* at 511. Because no Supreme Court decision "clearly establishes that the exclusion of such evidence for such reasons in a particular case violates the Constitution," the state court was entitled to "the substantial deference that AEDPA requires." *Jackson*, 569 U.S. at 511–12; *see also Kubsch v. Neal*, 838, F.3d 845, 859 (7th Cir. 2016) (noting that to prove a Sixth Amendment

violation, "the proffered evidence must be essential to the defendant's ability to present a defense; it cannot be cumulative, impeaching, unfairly prejudicial, or potentially misleading"). Thus, the Indiana Court of Appeals' decision that Nunley was not denied his right to present a defense was not contrary to or an unreasonable application of clearly established federal law.

Further, even assuming there was a constitutional violation, any error was harmless. As the Supreme Court has explained,

> For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable probability that the error was harmful.

*Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (internal quotations and citations omitted). Here, the Court harbors no grave doubt about whether exclusion of the prior accusation and recantation had a substantial influence on the jury's verdict. The recanted accusation was not similar to A.Y.'s accusation against Mr. Nunley. A.Y. had seen Foreman physically attack her mother and was motivated to lie about the incident because she thought he deserved to be in jail. However, she recanted her statement six weeks later because she knew lying was wrong. With Mr. Nunley, A.Y. never wavered from her recounting that Mr. Nunley had molested her, and A.Y. had always enjoyed going to his house before the incident. Thus, if anything, evidence of the prior accusation and recantation may have had the effect of bolstering A.Y.'s credibility.

In summary, the Indiana Court of Appeals did not unreasonably apply *Jackson*, *Holmes*, or any other clearly established federal law, and habeas relief is not warranted for this claim.

## B.    Right to Confrontation

Mr. Nunley next argues that his right to confrontation was violated when the trial court permitted the drumbeat repetition of hearsay evidence to bolster A.Y.'s testimony. The respondent

contends that Mr. Nunley procedurally defaulted this claim by not presenting it to the Indiana Supreme Court.

If a petitioner in custody pursuant to a state court judgment raises a claim on federal habeas review without first presenting it through "one complete round of the State's established appellate review process," that claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also see also Hicks v. Hepp*, 871 F.3d 513, 530−31 (7th Cir. 2017). The petitioner must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Boerckel*, 526 U.S. at 845). The petitioner must present "both the operative facts and controlling law." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (internal citation omitted).

Mr. Nunley raised a Sixth Amendment Confrontation Clause argument in his brief to the Indiana Court of Appeals, dkt. 14-3 at 29-31, but he did not renew that argument in his brief to the Indiana Supreme Court. Rather, he argued that the drumbeat repetition through witnesses and video of A.Y.'s accusation contravened an Indiana Supreme Court decision, *Modesitt v. State*, 578 N.E.2d 649 (1991). Dkt. 14-6 at 8-10. There, the Indiana Supreme Court modified a state evidentiary rule. *Modesitt*, 578 N.E.2d at 653–54. It was not a Sixth Amendment case.

In response, Mr. Nunley argues that he sufficiently raised the claim in his brief to the Indiana Court of Appeals and that this was fair presentment to the Indiana Supreme Court due to Indiana's Rules of Appellate Procedure. Under Indiana Rule of Appellate Procedure 58, if the Indiana Supreme Court grants transfer on a case, it then has "jurisdiction over the appeal and all issues as if originally filed in the Supreme Court." Mr. Nunley argues, then, that because the issue was argued in his brief to the Court of Appeals, it was necessarily presented to the Indiana Supreme

11

Court, and he was not required to resubmit those claims in his petition to transfer. Dkt. 19 at 13−14. But that was the same scenario presented to the Supreme Court in *Boerckel*. There, the respondent raised several constitutional issues in his brief to the Illinois Appellate Court but did not include those claims when he filed his petition for leave to appeal to the Illinois Supreme Court. *Boerckel*, 526 U.S. at 840. The Court held that "a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not "*properly* presented his claims to the state courts," resulting in procedural default of those claims. *Id.* at 848.

Because Mr. Nunley did not raise this claim in his petition to transfer to the Indiana Supreme Court, the claim is procedurally defaulted.

### C.    Ineffective Assistance of Trial Counsel

Mr. Nunley alleges that trial counsel rendered ineffective assistance of counsel for various reasons. To succeed on a claim that trial counsel was ineffective, a petitioner must show that counsel's performance was deficient and prejudicial. *Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 689−92 (1984)). Deficient performance means that counsel's actions "fell below an objective standard of reasonableness," and prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

The Indiana Court of Appeals correctly articulated the *Strickland* standard in Mr. Nunley's post-conviction memorandum decision. *Nunley II*, 2018 WL 2325438 at *3. The Court addresses each of Mr. Nunley's allegations.

#### 1.  The State's Waiver

Mr. Nunley first argues that the respondent waived its ability to challenge his ineffective assistance of trial and appellate counsel claims by not presenting evidence or legal argument during

post-conviction proceedings. Dkt. 2 at 6. The Indiana Court of Appeals rejected this argument, noting that "[t]he State filed an answer to Nunley's petition, asserted denials of his claims, and actively participated at the hearing." *Nunley II*, 2018 WL 2325438 at *3, n.1. Whether an Indiana court should have enforced Indiana's waiver rule against the State on post-conviction review is not a matter for this Court. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir., 2018) (state court's conclusion that rests on interpretation of state law "is iron-clad on habeas review"); *Estelle v. McGuire*, 502 U.S. 62, 67−68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

    2.  Failure to Impeach A.Y.

    Mr. Nunley's first allegation against his trial counsel is that she failed to impeach A.Y. with inconsistent statements she made in her deposition. Mr. Nunley's counsel testified at the post-conviction hearing which occurred on January 12, 2017, more than eight years after Mr. Nunley's trial. She testified that the only way the jury could convict Mr. Nunley was if they believed A.Y., so pointing out inconsistencies to challenge her credibility was part of her trial strategy. PCR Tr. 27−29. She could not recall if she used the deposition to impeach A.Y. because of the passage of time, *id.* at 28, and Mr. Nunley did not try to refresh her memory with the deposition.

    The Indiana Court of Appeals held that trial counsel was not ineffective for failing to impeach A.Y. with the deposition, stating:

> Nunley's trial counsel made strategic choices of how best to cast doubt on A.Y.'s trial testimony. Counsel had to tread carefully given A.Y. 's young age and her emotional state at trial. A.Y. cried during her direct examination and did not want to discuss the molestation because it was "too scary." Trial Tr. p. 438. A.Y. was similarly reluctant to answer questions about the molestation during her deposition and stated that she did not want to remember it.

*Nunley II*, 2018 WL 2325438 at *4.

Mr. Nunley names several instances of alleged inconsistencies in A.Y.'s deposition. Dkt. 19 at 21. The most serious inconsistency is that, during her deposition, A.Y. did not say anything to support Count 2. Dkt. 15-1, DA App. at 10 (alleging Mr. Nunley committed child molesting by putting A.Y.'s mouth on his penis). She testified during her deposition that Mr. Nunley "licked my pee-pee" and "made me watch a nasty show." DA App. at 219−20, 236. When prompted as to whether anything else occurred, she stated she did not remember because "[i]t's better not to remember." *Id.* at 224. When told she would have to remember the details for the deposition, she responded, "And then the case is finally cut open. … Am I free from it finally?" *Id.* An eight-year-old child's reluctance to disclose specific details during a deposition does not indicate that she fabricated that allegation. From the moment she got in her parents' car the day after the assault, A.Y. struggled to articulate the facts surrounding the molestation. She had to write down the details of what happened in order to describe what happened to her parents, and—as will be discussed below—to the jury. Mr. Nunley did not ask trial counsel about this (or any) specific inconsistency from the deposition. Thus, the Indiana Court of Appeals' reasoning that it was a strategic choice for trial counsel to "tread carefully given A.Y.'s young age and her emotional state at trial" did not run afoul of *Strickland*. Applying the high deference that AEDPA requires, the Indiana Court of Appeals' ruling on this specific allegation was not unreasonable.

Mr. Nunley's other examples of inconsistencies are much less compelling. He states A.Y. said her mother told her what to say to the policeman after the incident, but the exchange reveals that A.Y. was likely just confused by the line of questioning:

Q. Was your mom there with you when you talked to him?

A. Yeah.

Q. Did she tell you what to tell the policeman?

A. No.

Q. Okay.

A. She told me what to remember and stuff.

Q. What did she tell you?

A. Pretty must all what to remember, pretty much all she told to say.

Q. Okay, when she said what to remember, did she say exactly what she wanted you to remember?

A. Yeah, yeah. Yeah, she wanted me – Yeah.

Q. Can you tell me how she told you?

A. Well, she said it in a nice way, a really nice way, pretty much a nice way.

Q. Okay, can you give me an example of what she told you?

A. What I told her?

Q. No, what – what your mom told you?

A. She told me just to remember what the bad things that Ed Nunley did and stuff like that.

Q. Okay. And did she tell you what the bad things were that you were supposed to tell the policeman?

A. No, she really didn't much knew of – She didn't have to tell me.

…

Q. Okay, so when you went and talked to policeman, did you tell them the truth, everything that you told him?

A. Yeah.

DA App. at 214-16. At trial, A.Y. testified that her parents told her to tell police the truth, but did not tell her what to say. Tr. 484. Similarly, A.Y.'s mother testified that she told A.Y. to tell the police officer the truth, but not to exaggerate any details. Tr. 545. This may have been what A.Y. meant when she said her mom "in a really nice way" told her to say what Mr. Nunley did to her.

Other inconsistencies alleged by Mr. Nunley were not inconsistencies at all. Mr. Nunley alleges that A.Y. said in her deposition that she had spent the night at his house with her mother several times, but—consistent with her trial testimony—A.Y. actually stated in the deposition that she spent the night only once. DA App. at 206-07. Mr. Nunley also alleged that A.Y. said in her deposition that he did not hurt her. *Id.* at 240. But A.Y. never accused Mr. Nunley of physically injuring her when he molested her.

The Indiana Court of Appeals reasonably concluded that trial counsel was not ineffective for failing to impeach A.Y. with minor inconsistencies in her deposition, and habeas relief is not warranted on this basis.

3. Failure to Object to A.Y.'s Written Testimony

Mr. Nunley alleges that trial counsel was ineffective for failing to object to A.Y. being allowed to write down a portion of her testimony describing the molestation and further for not objecting when the trial court *sua sponte* admitted the written notes as exhibits. Trial counsel testified at the post-conviction hearing that submitting the written testimony to the jury was unusual and placed undue emphasis on that part of her testimony. PCR Tr. 31.

The Indiana Court of Appeals held that trial counsel was not ineffective for not objecting "when the trial court allowed a distraught eight-year-old child to write her testimony down on a piece of paper." *Nunley II*, 2018 WL 2325438 at *5. It further held that Mr. Nunley could not show prejudice from the trial court's admission of the statements into evidence because "A.Y.'s written

statements were consistent with what she had reported to her parents and law enforcement officers, which evidence was also admitted at trial." *Id.* In concluding this, the court relied on Indiana law which gives trial courts discretion to permit "'children to testify under special conditions despite the possibility that it would emphasize their testimony. ... As a result, the manner in which a party is entitled to question a witness of tender years, especially in embarrassing situations, is left largely to the discretion of the trial court.'" *Id.* (quoting *Shaffer v. State*, 674 N.E.2d 1, 5 (Ind. Ct. App. 1996)).

Again, this Court cannot second-guess the state court's determination of state law. *Estelle*, 502 U.S. at 67−68 (1991). In light of Indiana's rules permitting flexible questioning of child witnesses, the Indiana Court of Appeals reasonably concluded that trial counsel was not ineffective on this basis.

### 4. Failure to Challenge Violation of the Separation of Witnesses Order

Mr. Nunley next challenges his trial counsel's failure to object to A.Y. having lunch with her parents, arguing this amounted to a violation of the court's separation of witnesses order. A.Y. particularly struggled during the first part of her testimony—crying repeatedly and stating she did not want to describe the incident in front of so many people. Tr. 438. The court took a break, and asked one of the prosecutors to go to lunch with A.Y. and her parents to ensure they did not violate the separation of witnesses order by discussing the case. Tr. 446. Once trial resumed, A.Y. wrote down and read aloud her testimony about the incident. Tr. 449-50.

Because she was able to testify more effectively after lunch, Mr. Nunley believes that she was coached during the recess. His trial counsel testified at the post-conviction hearing that she did not object because, as the trial court said, the point of sending the prosecutor to lunch with A.Y. and her family was to ensure the separation of witnesses order was *not* violated. PCR Tr. 34.

The Indiana Court of Appeals rejected this claim, noting first that Mr. Nunley's contention that A.Y. was coached over the break was "pure speculation." *Nunley II*, 2018 WL 2325438, at *5. It noted that the trial court's purpose was to prevent any violation of the separation order, that the trial court asked the prosecutor whether anything happened during the break, and that it was clearly appropriate for the court to allow A.Y. to have lunch with her parents given how stressful the trial was. *Id.*

The Indiana Court of Appeals reasonably applied *Strickland* in its determination that trial counsel was not ineffective on this basis.

5. Cumulative Impact

Mr. Nunley's final allegation against his trial counsel is that he was prejudiced by the cumulative effect of trial counsel's errors. The Indiana Court of Appeals concluded that Mr. Nunley waived this argument by not citing any authority or presenting a cogent argument as Indiana Appellate Rule 46(A)(8)(a) required him to do. *Nunley II* 2018 WL 2325438 at *6. The respondent argues that Mr. Nunley has procedurally defaulted this claim. One type of procedural default occurs when "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). "This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted).

"In assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules. Instead, we ask whether the rule invoked was firmly established and regularly followed." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (citations and quotations marks omitted). Indiana courts regularly find waiver by

invoking Indiana Appellate Rule 46(A)(8)(a). *See, e.g. Lacey v. State*, 124 N.E.3d 1253, 1257 n. 8 (Ind. Ct. App. 2019); *Cherry v. State*, 57 N.E.3d 867, 876-77 (Ind. Ct. App. 2016); *Casady v. State*, 934 N.E.2d 1181, 1190 (Ind. Ct. App. 2010) (all finding waiver under Ind. Appellate Rule 46(A)(8)(a) for failing to cite to the record or relevant legal authority). Accordingly, the Court finds this claim to be procedurally defaulted.

In summary, the Indiana Court of Appeals' determination that trial counsel did not render ineffective assistance of counsel for any of the reasons alleged by Mr. Nunley was a reasonable application of *Strickland*. Habeas relief is not warranted on this basis.

**D.      Ineffective Assistance of Appellate Counsel**

Mr. Nunley raises six claims of ineffective assistance of appellate counsel. The Indiana Court of Appeals correctly identified the *Strickland* framework for these claims.

**1.   Failure to Raise Defense Well**

Mr. Nunley alleges that his appellate counsel failed to raise his denial of defense argument well. The Indiana Court of Appeals first noted that his claim was waived pursuant to Indiana Appellate Rule 46(A)(8)(a) for failing to cite to any portion of the record to support this claim. The respondent argues that Mr. Nunley therefore procedurally defaulted the claim due to the fact that the state court's decision rests on an independent state law ground. Dkt. 14 at 24, citing *Coleman*, 501 U.S. at 729.

Because the Court addressed Mr. Nunley's denial of defense claim above, the Court will bypass the procedural default question. *See Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (concluding that it is appropriate to bypass a "difficult" procedural default question and "proceed to adjudicate the merits" when it is "clear" the petition should be denied on the merits).

As discussed at length in section A, the Indiana Court of Appeals properly applied federal law on direct appeal when it determined that exclusion of evidence about A.Y.'s recantation did not violate Mr. Nunley's Sixth Amendment right to present a defense. Further, Mr. Nunley's arguments largely mirror those put forth by his appellate counsel on this issue. *Compare* dkt. 2 at 12-13 *with* dkt. 14-3 at 17-19. Because there was no Sixth Amendment violation, appellate counsel was not ineffective for the way he presented this claim.

### 2. Double Jeopardy

Mr. Nunley alleges appellate counsel was ineffective for failing to raise a double jeopardy claim. He argues that because all three acts involved a single confrontation with a single victim, convictions on Counts 1, 2, and 5 violate the Double Jeopardy Clause. In support, he relies on an Indiana Supreme Court case, *Bowling v. State*, 560 N.E.2d 658, 660 (Ind. 1990), where the court held that "imposition of two sentences for the same injurious consequences sustained by the same victim during a single confrontation violated both Federal and State double jeopardy prohibitions," requiring that one of the defendant's child molest convictions be set aside (citing *Ellis v. State*, 528 N.E.2d 60 (Ind. 1988)).

Rejecting this claim, the Indiana Court of Appeals stated:

> But the authority that Nunley relies upon, *Bowling v. State*, 560 N.E.2d 658 (Ind. 1990), was impliedly overruled by our supreme court in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). *See Vermillion v. State*, 978 N.E.2d 459, 465 (Ind. Ct. App. 2012) (stating that "when *Richardson* was decided in 1999, it abrogated a number of cases that articulated the 'single incident' reasoning found in Bowling. However, *Richardson* made no mention of *Bowling*."). The *Vermillion* court held that "[a] trial court may impose consecutive sentences for separate and distinct crimes that arise out of a single confrontation involving the same victim—subject to *Richardson's* double-jeopardy protections, other sentencing mandates, and our abuse-of-discretion review." *Id.* at 466; *see also* Ind. Code § 35–50–1–2.

*Nunley II*, 2018 WL 2325438 at *7. Notably, although the *Richardson* Court did not mention *Bowling*, it included *Ellis*—the case the Indiana Supreme Court relied upon in *Bowling*—in its list of double jeopardy cases abrogated by its decision. *Richardson*, 717 N.E.2d at 49, n. 36.

The Indiana Court of Appeals' determination that Mr. Nunley relied on precedent that was "impliedly overruled" is based on state law, making it a decision that this Court cannot second-guess. *Estelle*, 502 U.S. at 67-68; *see also Miller v. Zatecky,* 820 F.3d 275, 280 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). Habeas relief is not warranted on this issue.

### 3. Failure to Challenge Sentencing

Mr. Nunley alleges that appellate counsel was ineffective for failing to challenge his sentence. The Court of Appeals rejected the claim on post-conviction review. With respect to Mr. Nunley's contention that the trial court abused its discretion for aggravating his sentence based on uncharged criminal conduct, the court noted that "[i]t is well-established that trial courts may consider previous criminal activity, even though uncharged, in the determination of aggravating circumstances at sentencing." *Nunley II*, 2018 WL 2325438 at *8 (internal quotation and citation omitted). With respect to Mr. Nunley's argument that appellate counsel should have challenged the appropriateness of his sentence pursuant to Indiana Appellate Rule 7B, the court rejected that claim, finding "[h]ad appellate counsel raised the issue, our court would almost certainly have concluded that Nunley's sentence was not inappropriate in light of the nature of the offense and character of the offender." *Id.*

As with the previous issue, the Court of Appeals' analysis is based on state sentencing jurisprudence, which the Court has no authority to disagree with. *Miller*, 820 F.3d at 277.

> 4. Failure to Impeach A.Y., Challenge the Introduction of A.Y.'s Written Testimony, and Challenge the Separation of Witnesses

Mr. Nunley's remaining claims overlap with the ineffective assistance of trial counsel claims discussed above. The Indiana Court of Appeals found that because Mr. Nunley had not shown that his trial counsel was ineffective for failing to raise those issues, appellate counsel was not ineffective for failing to raise them either. *Nunley II*, 2018 WL 2325438 at *6, n. 3. This was a reasonable application of federal law.

In summary, the Court of Appeals reasonably applied *Strickland* when it determined that appellate counsel was not ineffective.

## IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Further, where a claim is resolved on procedural grounds (such as procedural default), a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Mr. Nunley's claims are procedurally defaulted or meritless. Jurists of reason would not disagree with this Court's resolution of his claims, and nothing about the claims deserves encouragement to proceed further.

The Court therefore **denies** a certificate of appealability.

## V. Conclusion

Mr. Nunley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue. Final judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date:   3/30/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LAWRENCE NUNLEY
198710
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov